THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC CAINE (Impleaded), Defendant-Appellant.

First District (3rd Division)  No. 1—89—3233

Opinion filed February 16, 1994.

Rita A. Fry, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judy L. DeAngelis, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Codefendants Eric Caine and Aaron Patterson were charged with murder, felony murder, armed robbery, home invasion, residential burglary and armed violence in the deaths of 73-year-old Vincent Sanchez and 62-year-old Rafaela Sanchez. At the conclusion of Eric Caine's trial, he was convicted of two counts of murder, two counts of home invasion and one count of residential burglary. As to the imposition of the death penalty, the jury could not find beyond a reasonable doubt that defendant was eligible for the death sentence. Accordingly, the trial court sentenced defendant to natural life imprisonment.

On April 19, 1986, the mutilated and bloody bodies of Vincent and Rafaela Sanchez were found strewn about their home. Vincent suffered 25 stab wounds, including three to the neck, and Rafaela suffered 10 stab wounds. After being taken into police custody, defendant stated he had no knowledge of the Sanchez murder, but he admitted that a few days before the murders, Aaron Patterson approached him about "going on a mission" concerning "an old white guy." On April 15 or 16, 1986, defendant was with "Darnell" at "Rambo's" house and Patterson again indicated they would "go on a mission," meaning to kill someone. Patterson wanted to "get" Mr. Sanchez, whom defendant knew to be an elderly Mexican man who bought and sold guns. After being read his *Miranda* rights, defendant then admitted that he was present when the Sanchezes were murdered. The plan was to rob them of their guns, but when Mr. Sanchez would not give them the guns, Aaron Patterson stabbed them and defendant fled.

Defendant testified that on April 17, 1986, he went to a bar until 2 a.m. He denied asking the Apache Rangers gang to sell him a gun. He also denied that Patterson ever asked him to "go on a mission" nor did anyone accompany him to the Sanchez home. He further testified he never saw Aaron Patterson stab Mr. Sanchez.

After his arrest on April 30, 1986, defendant testified that Detective Pienta told defendant that Patterson had committed the murder and told him defendant had been present but ran. Defendant told Pienta he knew nothing about it. He was then taken to see Patterson, who was beat up and could barely speak. Pienta struck defendant in the chest and told him he "better be cool" or he would get the same treatment as Patterson.

The next morning Detective Madigan brought defendant his breakfast, read him his rights and informed him he was under arrest. Madigan also said that if defendant cooperated he would have nothing to worry about and could go home. Madigan kept taking notes although defendant was not talking. He hit defendant in the head a few times and eventually defendant signed the notes. Defendant later met with two assistant State's Attorneys who wanted a court-reported statement. According to the defendant, the assistant State's Attorneys told him that they wanted the questions answered in a certain way so that the statement would correspond with Madigan's notes. Upon completing the statement, Madigan and the assistant State's Attorney started laughing at defendant, who then began to cry.

On cross-examination, defendant testified that Madigan had told him everything that Patterson had said. Defendant then "went along with" everything Patterson had said in order to go home, as Madigan had promised. According to defendant, most of his admissions were facts which Madigan had told him: the mission, the gun deal, the Sanchez home, the stabbing and the fact that defendant ran from the house.

## ISSUES

On appeal, defendant contends: (1) defendant's motion to quash arrest and suppress statements should have been granted; (2) the State racially discriminated in its use of peremptory challenges; and (3) the codefendant's statement, implicating defendant, should not have been allowed into evidence.

## OPINION

The first issue we consider is whether or not defendant's motion to quash his arrest and subsequent statements should have been

granted. On April 30, 1986, defendant Aaron Patterson implicated Eric Caine in the Sanchez murders. Detective Pienta testified that Patterson confessed that he and defendant planned to rob the Sanchez home for guns and money. Although Patterson admitted that he had stabbed both husband and wife, this was the first time that defendant's name had surfaced in the investigation. Patterson told them that defendant needed guns and that he knew how to get into the Sanchez home.

Defendant's mother, Laura Rene Johnson, testified that on April 30, 1986, she was living at 9219 South Brandon in Chicago and on that day defendant was visiting her. When she arrived home that evening, Sergeant Wilson, with whom she was acquainted, was waiting outside the house and he informed her that her son was in a lot of trouble. Wilson explained that defendant would not open the apartment door. Upon entry, Sergeant Wilson grabbed defendant by the arm and pants and told him he had been implicated in a murder scheme. Johnson testified that four other officers came up stairs and "tried to hurt" defendant and they began punching him.

After arrival at the station, defendant was questioned by Detectives Pienta and Marley, both of whom testified that defendant was never kicked or struck in the head nor was he promised he would not be charged if he confessed. Detective Madigan also testified that, after advising defendant of his *Miranda* rights, he had a 45-minute conversation with defendant and that he was also present for the court-reported statement taken by the assistant State's Attorney. Madigan stated that no one struck defendant in the head or kicked him. Moreover, no promises were made as part of a plea-bargaining agreement.

The trial court specifically found that an arrest of defendant took place at his mother's home. Probable cause exists for an arrest when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 494 N.E.2d 475.) Where probable cause is based upon an informant's tip, the informant's veracity, reliability and basis of knowledge are determinative. (*People v. Halmon* (1992), 225 Ill. App. 3d 259, 587 N.E.2d 1182.) Although an accomplice's statements may provide a basis for probable cause, the test is whether they provide sufficient information and reliability such that a reasonably prudent person, having the knowledge possessed by the officer at the time of his arrest, would believe the defendant committed the offense. *People v. Shelby* (1991), 221 Ill. App. 3d 1028, 582 N.E.2d 1281.

The finding of probable cause by the trial court will not be overturned on review unless we find it to be manifestly erroneous. (*People v. Bell* (1981), 96 Ill. App. 3d 857, 421 N.E.2d 1351.) In this case, probable cause may further be established by an accomplice where a statement is made against the person's penal interest or it corroborates what the police already know. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) In *James*, as in the instant case, defendant Meeks was implicated in the crime by his accomplice, who confessed and gave specific details of the actions of both parties. Meeks later signed a written confession.

■ Detective Pienta learned from Aaron Patterson that defendant needed guns and he knew a way to get into the Sanchez home. Patterson also detailed how he stabbed Mr. and Mrs. Sanchez and how they fled the scene. Patterson had already admitted to a double homicide and, given the totality of the circumstances, we find that a reasonably prudent person in Sergeant Wilson's position would have possessed probable cause to arrest defendant at his mother's home. Because we find defendant's arrest was not illegal, we need not consider whether defendant's subsequent statement need be suppressed as having been made pursuant to an illegal arrest.

Defendant next argues that the State misused its peremptory jury challenges in a racially discriminatory manner. Because defendant failed to preserve this issue on appeal either in an oral or written post-trial motion, the State urges we find it has been waived and not consider it on review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, where a defendant challenges the State's use of peremptory challenges during *voir dire* and fails to subsequently preserve it in a post-trial motion, such error is not waived on appeal. (*People v. Whaley* (1989), 184 Ill. App. 3d 459, 540 N.E.2d 421.) *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, only requires a "timely objection" to the State's use of a peremptory challenge.

Under *Batson*, in order to establish a *prima facie* case of discrimination, a defendant must show he is a member of a cognizable racial group and that the State used peremptory challenges in a prejudicial manner in order to eliminate members of his race from the jury panel. The defendant must further show any facts and circumstances which raise an inference of discrimination in the use of peremptory challenges. Once a *prima facie* case is shown, the burden shifts to the State to provide race-neutral explanations for its peremptory challenges. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The initial determination of a *prima facie* case is for the trial court, being in a superior position to judge the character and demeanor of the venire.

During the selection of the venire, the State exercised its first three peremptory challenges against three African-Americans: Lonnie Burks, Elizabeth Vick and Delores Smith. The defendant Eric Caine is African-American. After the defense objected on *Batson* grounds to the exclusion of Vick and Smith, the trial court admonished the prosecution and held that a *prima facie* case under *Batson* had been presented. The trial court then ordered the State to provide race-neutral reasons for their exclusion.

As to Lonnie Burks, the State relied upon a "rap sheet" which listed a person named Burks with the same birth date. The rap sheet contained a conviction for theft. The State argued that although the person on the rap sheet had a different first name and Lonnie Burks denied it was him, he would hold a grudge for having had his credentials scrutinized. Burks also lived in the "south side area" where the defendant resided. The State also did not find he was from a "family background" since he was living with his girl friend and her infant child. Finally, Burks misspelled his place of employment and this could affect his ability to read or understand jury instructions.

■ First, a conviction for robbery or theft would be a race-neutral reason for excluding Burks from the jury. (*People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.) However, the faulty information and lack of identification would not suffice as a valid explanation in this case. A person from a "strong family background" would also be a legitimate race-neutral explanation, since it appeared as though Burks were "in transit" at the moment. Moreover, residing near the scene of the crime or the defendant has been held to be a legitimate race-neutral reason for exclusion. (*People v. Andrews* (1993), 155 Ill. 2d 286, 614 N.E.2d 1184.) Finally, concerns about a juror's ability to comprehend instructions may also be a race-neutral explanation.

As to the explanation that Delores Smith had a "snotty" attitude, demeanor-based explanations have been held race-neutral. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) A juror has been excluded for a casual attitude or for giggling. (*People v. Powell* (1991), 224 Ill. App. 3d 127, 586 N.E.2d 589.) Delores Smith was also excluded because of her son's pending felony case. A prospective juror has been properly excused where his or her immediate family has been arrested for a felony. (*People v. Young*, 128 Ill. 2d 1, 538 N.E.2d 453.) This has been held valid even where a juror's ex-husband had a pending murder charge. *People v. Powell*, 224 Ill. App. 3d at 133, 586 N.E.2d at 595.

Next we consider Elizabeth Vick. The State informed the trial court of its rap sheet for Vick, indicating an arrest for battery. Vick

explained to the trial court that she thought the entire battery proceeding had been "off the record." Vick also said she misunderstood the instruction that she must admit all offenses greater than a traffic ticket. The trial court refused to excuse Vick in order "to give her the benefit of the doubt." However, the State then explained that Vick had a difficult time answering and understanding questions and concepts presented.

We initially note that concealment has been found to be a race-neutral explanation for the exclusion of a juror. (See *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 586 N.E.2d 292.) Moreover, a juror may be excluded if he or she cannot fully comprehend the proceedings.

Based upon the foregoing, we do not find that the trial court improperly allowed the exclusion of the aforesaid jurors on racially motivated grounds.

At the conclusion of the *Batson* hearing, the trial court found the explanations to be race-neutral and the jury selection continued. Toward the completion of the jury selection, the State excluded Jennifer Owten and Mary Givens. The defense raised a *Batson* challenge as to their exclusion. The trial court found that no *prima facie* case of discrimination had been made. Defendant argues that this finding was in error.

When determining whether a *prima facie* case of racial discrimination has been shown, relevant factors include: (1) a pattern of strikes against black venirepersons; (2) the level of black representation in the venire as compared to the jury; (3) the prosecutor's questions during *voir dire*; and (4) the races of the defendant and victim or witnesses. See *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E.2d 784.

■ In this case the judge considered the fact that beyond the initial three challenges exercised against African-Americans, the remaining six challenges were against two white males, one white female and three African-American females. The composition of the selected jury was nine white and three African-American persons.

On review, the ruling of the trial court regarding a *prima facie* case is a finding of fact and will not be disturbed by this court unless it is against the manifest weight of the evidence. (*People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.) Even after weighing the evidence, if this court had decided differently it could not have reversed this decision. (*People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.) Based upon the foregoing facts and the evidence in the record, we fail to find that the trial court's conclusion of no *prima facie* showing was manifestly erroneous.

Defendant finally argues that the confession of Aaron Patterson was improperly introduced for impeachment purposes. The State maintains the Patterson confession was proffered for the limited purpose of demonstrating that defendant's confession was not coerced. It initially should be noted that no objection was made to the introduction of this evidence at trial, and while it may be waived, we will consider it on appeal.

█ The trial court relied upon *Tennessee v. Street* (1985), 471 U.S. 409, 85 L. Ed. 2d 425, 105 S. Ct. 2078, in finding there was no confrontational or constitutional problem in admitting the evidence. In *Street*, the State introduced the confession of an accomplice which was read to the jury after the judge instructed the jury that it was being introduced for the purpose of rebuttal only and not for its truthfulness. Likewise, in the instant case, the trial judge instructed the jury that the confession was not being offered for its truthfulness, but was presented solely to rebut certain portions of the defendant's testimony. Therefore, we do not find that the trial court abused its discretion in admitting the confession of Patterson as rebuttal evidence.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby affirmed in all respects.

Affirmed.

RIZZI and GREIMAN, JJ., concur.