THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS McNEAL, Defendant-Appellant.

First District (3rd Division)   No. 1—91—1717

Opinion filed June 15, 1994.—Rehearing denied August 23, 1994.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Dori K. Leo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Following a double jury trial, defendant, Carlos McNeal, and co-defendant, Frederick Williams, were convicted of aggravated criminal sexual assault in violation of section 12—14 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—14 (now 720 ILCS 5/12—14 (West 1992))) and armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 18—2 (now 720 ILCS 5/18—2 (West 1992))). Williams' case is not at issue in this appeal. Defendant was sentenced to serve two consecutive terms of 16 years' imprisonment for each offense. It is from the judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm.

## FACTUAL BACKGROUND

The following facts were adduced at trial. On July 7, 1990, at about 9 p.m., complainants, Rita Thomas and Samuel Hawkins, were walking on 117th Street near Wentworth Avenue in Chicago to visit an acquaintance. That individual was not home. Hawkins and Thomas then decided to go to 116th Street and Wentworth Avenue to visit Henry Chambers, Hawkins' brother-in-law. On their way to Chambers' home, the couple passed defendant and Williams. When approaching Chambers' house, Hawkins realized Chambers was not home as his car was gone. The couple testified that they then turned back and on their way were approached by defendant and Williams. Complainants stated that Williams then asked them if they wanted to buy some marijuana. Hawkins refused and the couple continued walking.

Hawkins recounted that he was then grabbed from behind and a gun was placed to his head. Thomas recalled that after Williams produced the gun, Williams told her and Hawkins to keep walking. The couple was then led to a gangway where Hawkins was ordered to

lie down. Williams took a gold chain and cross, appointment book, wristwatch and cash from Hawkins.

Thomas testified that while Williams was robbing Hawkins, defendant ordered her to lie down on the ground. Defendant took Thomas' cash and jewelry and tried to kiss her. Defendant then fondled Thomas' breasts and digitally penetrated her vagina. Finally, both men fled the crime scene.

Thomas and Hawkins went to the police station to report the crime. At the station, complainants spoke to Officers Luis Vega and Eric Washington. Later that night, the two officers drove complainants back to the scene of the crime and around the area. While riding with police, complainants saw defendant on the street and identified him as one of the offenders. Officer Vega recounted that he observed defendant trying to hide behind his companion, Lee Holmes, while dropping jewelry from his pockets. Both defendant and Holmes testified that defendant did not drop any jewelry from his pockets and that the shorts he was wearing that night did not have any pockets.

Officers Washington and Vega testified that after they arrested defendant and informed him of his *Miranda* rights, defendant told them that Williams robbed complainants and that he had no part in the crime. At trial, defendant denied making this statement to the police. Both defendant and Williams denied robbing complainants or that defendant sexually assaulted Thomas.

Williams did admit to meeting Hawkins on the night in question but that it was in the context of selling him a bogus bag of cocaine which contained soap shavings. Williams claimed that Hawkins traded him $9 and the jewelry for the fake drugs. Hawkins denied ever having entered into any such transaction.

At the conclusion of trial, both juries found defendants guilty as charged.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant argues that: (1) the State racially discriminated in its exercise of peremptory challenges; and (2) the State failed to prove him guilty of the charges beyond a reasonable doubt.

## OPINION

■ Defendant, who is African-American, first contends that the trial court erred in finding that the State offered sufficient race-neutral explanations for its use of peremptory challenges to exclude three African-Americans from the jury. During *voir dire*, the State used 10 peremptory challenges: one challenge was used against an

individual described in the record as an Egyptian, three were against whites and three were against African-Americans. The jury which convicted defendant contained 10 white jurors and 2 African-Americans.

The United States Supreme Court in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, held that the intentional use of peremptory challenges to exclude African-Americans from a jury violates equal protection of law as guaranteed by the fourteenth amendment. Pursuant to *Batson*, a defendant must initially demonstrate a *prima facie* case of racial discrimination, thus shifting the burden to the State to give a race-neutral explanation for each peremptory challenge to which defendant objected. (*Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The initial issue of whether a defendant has made a *prima facie* showing, however, becomes moot "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination ***." (*Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.) Here, because the State gave explanations for its use of peremptory challenges at issue and the trial court ruled these explanations were race-neutral, the question of whether defendant put forth a *prima facie* case is moot. Thus, we turn to the question of whether the trial court erred in finding that the explanations given by the State were sufficiently race-neutral.

"In reviewing the trial court's finding of whether the defendant established purposeful discrimination, we are mindful that a trial court's determination is a finding of fact and will not be overturned on review unless it is found to be clearly erroneous." *People v. Andrews* (1993), 155 Ill. 2d 286, 293-94, 614 N.E.2d 1184; see also *People v. Hope* (1992), 147 Ill. 2d 315, 589 N.E.2d 503; *People v. Powell* (1991), 224 Ill. App. 3d 127, 586 N.E.2d 589.

A prosecutor must show more than an intuitive judgment that black jurors will favor black defendants, but the prosecutor's explanations "need not rise to the level justifying exercise of a challenge for cause." (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) A prosecutor need only "articulate a neutral explanation related to the particular case to be tried." (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1724.) The State's explanation is not race-neutral if the State retains white veniremembers having the same or similar characteristics, and there are no additional characteristics to distinguish meaningfully the white veniremembers who were retained from the African-American veniremembers who were challenged. *People v. Mack* (1989), 128 Ill. 2d 231, 239, 538 N.E.2d 1107.

After a careful review of the record, we cannot conclude that the trial court's determination that the State's use of peremptory challenges was race-neutral was erroneous.

First, with regard to veniremember Barbara Vick, the State's explanation for striking her was based on the fact that she had previously filed discrimination lawsuits against the State. Clearly, it is not unreasonable for the State to conclude that Vick may have had some bias against the State given that she had previously been involved in adversarial proceedings against it. Thus, we find the State explanation of its exclusion of Vick sufficiently race-neutral.

Second, respecting veniremember Linda McCollun, the prosecution explained that she was excluded because her youngest son had criminal charges pending against him for armed robbery. It has been held that a family member's involvement with the criminal justice system is sufficiently race-neutral to exclude a potential juror. (See *People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684; *Powell*, 224 Ill. App. 3d 127.) Accordingly, we find no error by the trial court with regard to Linda McCollun.

Third, in reference to veniremember Annie Pierson, the prosecutor noted that she had slept through most of the trial judge's introductory remarks to the veniremembers, including an explanation on judging the credibility of witnesses and the burden of proof in a criminal case. In addition, the State pointed out that when another veniremember was speaking about her experience as a victim of an armed robbery, Pierson shook her head back and forth and exhibited a disgusted look on her face. Challenging a prospective juror based upon a nonserious or inappropriate demeanor has been held to be proper. (See *Andrews*, 155 Ill. 2d at 303.) Consequently, we perceive no error by the trial court with respect to Pierson.

■ Next, defendant urges that the State failed to prove him guilty of the charges beyond a reasonable doubt. Specifically, defendant asserts the only evidence linking him to the crime is the testimony of Hawkins and Thomas, which defendant claims is "unreasonable and unsatisfactory."

On review, when confronted with a challenge to the sufficiency of the evidence, the relevant inquiry for a reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) A court of review applies this standard regardless of whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.) In the situation where the prosecution's evidence is circumstantial in nature, the

State is not obligated to exclude every reasonable hypothesis of innocence. (*People v. Eyler* (1989), 133 Ill. 2d 173, 549 N.E.2d 268.) The reviewing court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight to be assigned evidence or the credibility of witnesses. (*People v. Campbell* (1992), 146 Ill. 2d 363, 586 N.E.2d 1261.) Accordingly, a judgment of conviction will not be disturbed unless the evidence presented at trial is so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citation]." *Campbell*, 146 Ill. 2d at 375.

After a careful review of the evidence presented at trial and the record on appeal, we conclude that there is more than sufficient evidence from which the jury could have concluded that defendant committed the acts with which he was charged. The jury found Thomas' and Hawkins' testimony reliable and chose to believe the State's interpretation of the incident. While defendant's version of the story is quite different, it is the function of the jury to determine the credibility of witnesses and resolve conflicts. (*People v. Medeiros* (1993), 249 Ill. App. 3d 139, 141, 618 N.E.2d 1065.) In the case *sub judice*, the evidence can in no way be said to be unreasonable, improbable or unsatisfactory and, accordingly, we find no reasonable doubt of defendant's guilt.

■ Finally, we note that defendant also argued that the prosecutor made improper remarks during trial and, thus, he was denied a fair trial. However, we find that defendant has waived review of this issue by failing to properly object at trial and/or include such objections in a post-trial motion. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

## DISPOSITION

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and GREIMAN, JJ., concur.